**BEALS v. FONTENOT, Collector of Internal Revenue.**

No. 24.

District Court, E. D. Louisiana.

Oct. 9, 1939.

Leon S. Cahn, of New Orleans, La., for plaintiff.

Rene A. Viosca, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., for defendant.

BORAH, District Judge.

Plaintiff filed this suit as the duly qualified testamentary executrix of the estate of Joseph C. Beals against the defendant as Collector of Internal Revenue for the District of Louisiana, to recover the sum of $1,156.68 with 6% interest from May 15, 1937, which sum she claims was erroneously collected upon a re-determination by defendant of the tax due by the estate of the said Joseph C. Beals.

The case was tried by the Court without a jury upon the admissions in the pleadings and upon an agreed stipulation of facts which may be summarized as follows:

The G. H. Leidenheimer Baking Company, Ltd., hereinafter called the Bakery, was incorporated as a Louisiana corporation on July 10, 1908, with an authorized capital of $10,000, consisting of 100 shares of $100 par value each. Joseph C. Beals, plaintiff's testator, purchased twenty-four shares on October 23, 1908, paying for same, in cash, $2,400. George H. Leidenheimer took fifty-one shares at the same price per share. The remaining twenty-five shares were taken by stockholders who were never active in the management of the corporation. No additional capital was ever invested in the bakery other than the original $10,000. No transfers of stock were made except those occasioned by the death of a stockholder.

Beals was married on November 18, 1908, to plaintiff, who is his widow, and until his death on December 15, 1934, a community of acquêts and gains existed between the spouses in conformity with the laws of Louisiana. The value of his bakery stock on the date of marriage was its original cost of $2,400. At the time of his death his stock was worth $37,860, an increase of $35,460.

From the inception of the corporation, Leidenheimer was president and Beals was vice-president and secretary-treasurer. Leidenheimer and Beals devoted their entire time to the bakery. Generally, Leidenheimer supervised the production, or baking department; Beals handled the purchase of flour and all other materials, managed the sales, and handled all records and other office matters. Leidenheimer was an experienced baker; Beals was experienced in the flour business, in which he had been previously engaged for a number of years. Neither Leidenheimer nor Beals, at any time after the incorporation of the bakery, engaged in any other business activity. The bakery always employed the help necessary for its proper operation.

Leidenheimer became seriously ill in the year 1916. For about two years, until Leidenheimer's death on November 3, 1918, Beals assumed the entire management of the business, taking over Leidenheimer's duties, as well as his own, assisted in the production department by his step-son, Bernard J. Schutten. During Leidenheimer's lifetime he and Beals always drew equal salaries, starting at about $200 per month. Each of them was receiving $6,000 per year, at the time of Leidenheimer's

death. No other executive salaries were paid up until then. The value of the Beals' stock at the time of Leidenheimer's death was approximately $1,000 per share.

On July 31, 1919, Beals, by unanimous vote of the stockholders, was elected president, secretary-treasurer and general manager for a five year term at the same salary of $6,000 per annum. Leidenheimer's widow was elected vice-president at a salary of $1,800 per annum, but never performed any duties, and seldom visited the bakery. This arrangement was renewed regularly at five year intervals by unanimous vote of the stockholders, and was in force at Beals' death on December 15, 1934.

During Beals' presidency, from 1919 to 1934, inclusive, he exercised all executive authority. He was assisted in the production department by his step-son, Schutten, who was about 23 years old in 1919. Schutten took care of all production supervision, under Beals' direction, that Beals did not himself attend to. Schutten gradually made himself more useful. He was never, during Beals' lifetime, given any executive office, but received from time to time increases in salary, and was earning about $3,600 per annum by 1934. He succeeded to Beals' offices when Beals died.

During Leidenheimer's lifetime the board of directors consisted of Leidenheimer, Beals and Mrs. Beals. After 1918, the board consisted of Beals, Mrs. Leidenheimer and Mrs. Beals. Dividends were declared by the board, but it was the practice for the board to approve payment of dividends upon Beals' recommendations. The board of directors always held all the stock, either directly, or under powers of attorney.

Prior to Leidenheimer's death, a total of $25,000 had been paid in dividends to the stockholders, of which $20,000 was paid out after he became incapacitated by illness. During the period of Beals' presidency a total of $425,000 was paid in dividends.

Upon Beals' death the capital and surplus of the corporation amounted to some $157,750, or, $1,577 per share. The surplus of $147,750 consisted exclusively of undistributed profits from operations in due course of business. No capital gains or other fortuitous profits, outside of regular operations, were ever realized by the corporation. The bulk of the accumulated surplus was not necessary to the operations of the business; almost $100,000 thereof was invested in bonds when Beals died. Beals was a very conservative business man.

From 1916 to 1934, inclusive, Beals received, as dividends from his stock, approximately the sum of $108,000, which fell into the community. He also received during this same period salaries totalling approximately $108,000.

On or about December 5, 1935, plaintiff filed with defendant a tax return upon the estate of Joseph C. Beals, in which the community was credited with the increase in value of the stock of $35,460, and the separate estate of the decedent was credited with the original cost of $2,400, and plaintiff paid a tax on the estate value.

This return was audited by defendant; the estate value re-determined, and a net additional tax of $1094.50 proposed; of this amount plaintiff complains only of $1,058.84, which was arrived at by treating the entire value of the bakery stock as the separate property of decedent, resulting in an increase in the value of the separate estate of one-half of the $35,460 item or $17,730, which with the $2,400 item made a total stock value of $37,860 credited to the separate estate.

Plaintiff's protest was refused by defendant, after hearing, and plaintiff, having waived an appeal to the Board of Tax Appeals on May 15, 1937, paid under protest the additional sum of $1,094.50 plus $90.80 interest, or a total of $1,185.30. Of this amount plaintiff contests the sum of $1,058.84, additional tax caused by the stock value re-determination, plus $87.84 interest, or a total of $1,156.68.

■ At the time of the marriage of Joseph C. Beals to plaintiff on November 18, 1908, the bakery stock was and remained his separate property. La.Civil Code, Article 2334.

■ The increase in value of the stock after the marriage would fall into the community only if it "be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade." La.Civil Code, Article 2408.

■■ The increase in value of the stock was due to the efforts of the corporation and there is no reason here to disregard the corporate fiction. Joseph C. Beals was

fully paid for his individual efforts. The case comes within the proviso of Louisiana Civil Code, Article 2408, and defendant properly treated the total value of the stock as part of the separate estate.

Defendant is entitled to judgment in his favor and against the plaintiff dismissing her suit with costs, and the clerk is directed to enter judgment accordingly.